Paul A. Turcke (ISB #4759)
MSBT LAW, CHARTERED
7699 West Riverside Drive
Boise, ID 83714
Tel:  208-331-1800
pat@msbtlaw.com

Of Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SAWTOOTH MOUNTAIN RANCH LLC, LYNN ARNONE, DAVID BOREN, | ) ) ) | Case No. _____ |
| Plaintiffs, v. | ) ) ) ) | |
| UNITED STATES FOREST SERVICE; SAWTOOTH NATIONAL FOREST; JIM DEMAAGD, Forest Supervisor; SAWTOOTH NATIONAL RECREATION AREA; KIRK FLANNIGAN, Area Ranger; | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**NATURE OF ACTION**

1.　　This action seeks declaratory and injunctive relief requiring Defendants United States Forest Service, Sawtooth National Forest, Forest Supervisor Jim DeMaagd, Sawtooth National Recreation Area, and Area Ranger Kirk Flannigan to comply with controlling law while managing the Recreation Area and Sawtooth National Forest.

2.　　Plaintiffs specifically challenge the approval of and any actions associated with the Redfish to Stanley Trail, as described in the Decision Memo signed by Mr. Flannigan on June 6, 2017.  The proposed Trail will cross over a mile of private property owned by Plaintiffs.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF – Page 1

3.      The Forest Service holds rights under a Conservation Easement Deed entered on May 10, 2005 by the United States and Plaintiffs' predecessor(s) in interest, which specifies the location of, and permitted activities associated with, a trail easement across Plaintiffs' private property.

4.      The Forest Service has circulated public documents describing the Trail. Plaintiffs and the Forest Service have conducted various communications ranging from e-mails to personal meetings while walking the property, during which Plaintiffs have expressed certain views and opinions about the location and nature of that portion of the Trail proposed to cross Plaintiffs' property. The Forest Service has recently advised that it is choosing to disregard significant aspects of Plaintiffs' feedback and that actions are imminent to implement and begin construction of the Trail approved in the Decision Memo.

5.      There are numerous flaws and illegalities associated with Defendants' approval and imminent construction, the most obvious being that the Trail as approved in the Decision Memo deviates from the deeded easement and would trespass upon Plaintiffs' private property.

6.      This action arises under the Sawtooth National Recreation Area Act, 16 U.S.C. § 460aa et seq. ("SNRA Act"); the National Forest Management Act, 16 U.S.C. § 1600 et seq. ("NFMA"); the National Environmental Policy Act, 42 U.S.C. § 4331, et seq. ("NEPA"); the Administrative Procedure Act, 5 U.S.C. § 551, et seq. (the "APA"); the Declaratory Judgment Act, 28 U.S.C. § 2201, and any regulations or other authorities implementing these statutes.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States. The conduct complained of creates an actual, justiciable controversy and is made reviewable under the APA.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF – Page 2

8. Venue is proper in this Court under 28 U.S.C. § 1391(e) because a plaintiff(s) and defendant(s) resides and/or a substantial number of the events or omissions giving rise to these claims occurred, or, a substantial part of the property that is the subject of these claims is situated, within the District of Idaho. The project at issue involves lands within Custer County, Idaho. The Decision Memo was issued from the Area Ranger's office in Ketchum, Idaho.

## PARTIES

9. Plaintiff Sawtooth Mountain Ranch LLC is an Idaho Limited Liability Company formed and operated in accordance with Title 30, chapters 21 and 25, Idaho Code (the "LLC"). The Certificate of Organization for the LLC was filed with the Idaho Secretary of State on October 24, 2016. The LLC holds title to the real property at issue in this action, as well as various personal property, livestock, fixtures, grazing rights, and other interests associated with a real estate and livestock ranching operation conducted on the property at issue and other lands in Custer County, Idaho.

10. Plaintiff David Boren is an individual residing in Boise, Idaho. Mr. Boren is the organizer and sole member of Sawtooth Mountain Ranch LLC. Mr. Boren oversees and is involved in the daily operations of the LLC. Mr. Boren has been the point of contact for the LLC with the SNRA and Forest Service personnel involving LLC operations, use/enjoyment of the LLC property, compliance with the SNRA Act, and the Trail project at issue herein. Mr. Boren is married to Plaintiff Lynn Arnone.

11. Plaintiff Lynn Arnone is an individual residing in Boise, Idaho, and married to Plaintiff David Boren. Ms. Arnone is familiar with LLC operations and spends meaningful time on the property at issue owned by the LLC, but Ms. Arnone does not possess an ownership interest in the LLC.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF – Page 3

12. Defendant United States Forest Service is a federal agency within the United States Department of Agriculture. The Forest Service is charged with administering and overseeing United States National Forest System lands in accordance with applicable law.

13. Defendant Sawtooth National Forest is a subunit of the United States Forest Service comprised of approximately 2.1 million acres of land located in south central Idaho and northern Utah. The Forest's main office is located in Jerome, Idaho.

14. Defendant Jim DeMaagd is the Forest Supervisor for the Sawtooth National Forest. He is the supervisor for the Forest has ultimate authority for the procedures, actions and decisions of the Forest and is ultimately charged with ensuring the Forest complies with applicable law. He is sued solely in his official capacity.

15. Defendant Sawtooth National Recreation Area ("SNRA") is a subunit of the Sawtooth National Forest. The SNRA contains approximately 756,000 acres, including more than 20,000 acres of private property as well as roughly 375,855 acres of Congressionally-designated Wilderness in the Sawtooth, Hemingway-Boulders and Cecil D. Andrus-White Clouds Wilderness Areas. The SNRA's main office is located in Ketchum, Idaho.

16. Defendant Kirk Flannigan is the SNRA Area Ranger. He is the supervisor for the SNRA and has ultimate authority for the procedures, actions and decisions of the SNRA and is ultimately charged with ensuring the SNRA complies with applicable law. Mr. Flannigan signed the Decision Memo and has direct involvement in and oversight of all aspects of the Trail. He is sued solely in his official capacity.

**LEGAL FRAMEWORK**

17. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction" that does not fall within certain specified exceptions "any court of the

United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration….” 28 U.S.C. § 2201.

18. The APA addresses and regulates the function of executive branch administrative agencies within our system of open government. Among such functions, the APA represents a waiver of sovereign immunity by the United States and outlines the circumstances in which "final agency action" may be subject to judicial review, as well as the standards of review to be applied in such challenges.

19. The SNRA Act was passed as Public Law 92-400 on August 22, 1972 and is codified at 16 U.S.C. §§ 460aa through 460aa-14. The Act's general purpose is "to assure the preservation and protection of the natural, scenic, historic, pastoral, and fish and wildlife values and to provide for the enhancement of the recreational values associated therewith…." 16 U.S.C. § 460aa.

20. NFMA provides the statutory framework for management of the National Forest System. NFMA requires each Forest to prepare and revise a Land and Resource Management Plan ("Forest Plan"). 16 U.S.C. § 1604. A Forest Plan lays out broad guidelines to advance numerous goals and objectives, including to "insure consideration of the economic and environmental aspects of various systems of renewable resource management, including the related systems of silviculture and protection of forest resource, to provide for outdoor recreation (including wilderness), range, timber, watershed, wildlife, and fish…." *Id.* at (g)(3)(A).

21. A Forest Plan is the governing land use plan for an individual National Forest. A Forest Plan is strategic in nature, and does not make commitments to selection or specifications of any particular project or daily activities. The Forest Plan identifies objectives, standards and

guidelines to govern specific activities which are applied in more detailed project-level or site-specific planning.  These project-level decisions must be consistent with the Forest Plan.

22.     NEPA represents "our basic national charter for protection of the environment."  40 C.F.R. § 1500.1.   NEPA's protections of the "environment" refer to the "human environment" which "shall be interpreted comprehensively to include the natural and physical environment and the relationship of people with that environment."  40 C.F.R. § 1508.14.  Among its numerous purposes, NEPA procedures are designed to foster informed, transparent agency decision making built upon informed public participation.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

A.      Plaintiffs' Private Property.

23.     The private property at issue is located in Custer County, Idaho, adjacent to the southern end of Stanley and westward of State Highway 75, in a contiguous parcel including all or part of Sections 4, 5, 8, 9, 10, 15, 16 and 17 of T.10 N., R. 13 E., Boise Meridian.  The parcel consists of approximately 1,781.07 acres, all of which lies within the SNRA (the "Property").

24.     The Property was acquired by Plaintiffs in the fall of 2016.

25.     Plaintiffs Arnone and Boren spend meaningful time on the Property, which includes various structures and facilities.  The LLC includes and conducts a livestock and ranching operation on the Property.  Historically, those operations have involved a herd of cattle ranging from 250 to 450 head, spending significant time on the Property and additionally on public land livestock grazing allotments within and administered by the SNRA.

B.      The Conservation Easement Deed.

26.     The chain of title for the Property includes a Conservation Easement Deed dated May 10, 2005, which was recorded as Instrument 231391 on May 20, 2005 in the Custer County

Recorder's Office.  The Property owners at that time were various trusts and general/limited partnerships involving various members of the Piva Family, collectively called the "Grantors" in the Deed, and the United States, by and through the Secretary of Agriculture, called the "Grantees" in the Deed.

27. According to the Deed, the easement's purpose is to maintain the statutory values of the SNRA Act, to prevent "any use of the Property that will significant impair or interfere with the Conservation Values of the Property" and to "confine the use of the Property to such activities as are consistent with the purposes of this Easement."  Deed at 2.

28. Much of the Deed addresses existing uses, structures or other existing features of the Property, reservation of rights by the Grantors, and other prohibitions or obligations of the parties not relevant to this action.  Part VI section D of the Deed states that the "provisions of this Easement are enforceable in law or equity by both the Grantors and the United States, their successors or assigns."  Deed at 9.

29. Part VI section K of the Deed states:

Nothing herein contained shall be construed as affording the public access to any portion of the Property except that the United States is hereby granted the right to permit public use of the following:

(1) A strip of land to be utilized as a trail in that portion of the Easement area within Secs. 9, 15, and 16, as shown on Exhibit D, attached hereto and made a part hereof.  The total right-of-way width of the trail easement shall be 30 feet.  The following uses are allowed on the trail: snowmobile, snow grooming equipment, bicycle, horse, and foot travel.  The Grantee may erect appropriate signs to delineate the public use areas where needed.

(2) A strip of land along Valley Creek, to be utilized for foot travel only, extending from the centerline of Valley Creek to point parallel and being 20 feet distant beyond each mean high water line of Valley Creek.  The Grantee may erect appropriate signs to delineate the public use areas where needed.

30. Exhibit D is the last page of the Deed and includes a map depicting a portion of the Property including a dark line identified in the Legend as the "trail easement."

C.   The Trail Project.

31. The SNRA announced to the public in early 2014 its intent to construct and designate a trail approximately 4.5 miles long connecting the City of Stanley and Redfish Lake entry station. Roughly 1.5 miles of the proposed trail would be located within the Deed's easement across the Property.

32. The Trail project was summarized in a "proposed action" that was published in February, 2014 and available for public comment.

33. The proposed action stated the Trail would "be a consistent 78" (6'-6") wide to accommodate passing bike traffic." Proposed Action at 2. A "natural surface" was proposed on about 1.2 miles of the trail, with the remainder proposed to consist of "angular gravel" up to several inches "above adjacent grade" and be classified as a Trail Class 4 structure under the Forest Service trail classification system. *Id.*

34. According to Forest Service guidance, a Trail Class 4 route is "highly developed" which can be a "single lane" structure or be "[d]ouble lane where traffic volumes are high and passing is frequent." USFS Trail Class Matrix (dated Oct. 16, 2008). The continuum outlined by the Matrix is intended, in part, to allow agency decisionmakers to "[a]pply the Trail Class that most closely matches the management intent for the trail or trail segment…." *Id.*

35. In conjunction with the proposed action, the SNRA released a map, which depicts the location of the proposed trail along its entire length, including the portion proposed to traverse the Property.

36. The SNRA considered public comments and conducted additional analysis in determining whether or how to proceed on the Trail project. Mr. Flannigan eventually signed a Decision Memo dated June 6, 2017, which approved construction of the Trail essentially as presented in the proposed action, including the routing as depicted in the February, 2014 map, which was reproduced in the Decision Memo.

37. The trail route as depicted in the February, 2014 map and the Decision Memo does not match Exhibit D to the Deed. The trail route approved in the Decision Memo would cross Plaintiffs' private property in the vicinity of the southern end of the Stanley airstrip, outside any rational interpretation of the 30-foot wide easement in Exhibit D to the Deed.

38. During 2017 and 2018 Plaintiffs were involved in various communications with the SNRA regarding the Trail project. These included transmission via email from the SNRA staff to Plaintiffs of additional information, including mapping which depicts a different trail routing than the Decision Memo, in which the Trail would exit the eastern boundary of the Property beyond the southern end of the airstrip, consistent with Exhibit D to the Deed.

39. In addition to these written communications, in September, 2018, Mr. Boren and SNRA staff met at and walked the Property, and generally discussed the Trail project. In these discussions Mr. Boren expressed various concerns about the Trail, including objection to the extent of proposed development/action outside the scope of the limited provisions of the Deed, and at the size and extent of development of the Trail, which he did not consider necessary or consistent with the type of "primitive" trail contemplated by the SNRA Act and reflected in nearly all other trails within the SNRA.

40. Plaintiffs received a letter dated November 26, 2018, signed by Mr. Flannigan that concludes by advising the SNRA "plans to proceed with developing the trail, in its entirety as proposed. I feel that the trail easement allows for this development level and type of use…."

41. On March 19, 2019 Mr. Boren received an email from SNRA staff which opened by saying "[s]pring is rapidly approaching and the Sawtooth NRA plans to begin construction on the Redfish to Stanley trail this season." The email proposed several times for a telephone call to "follow-up with you as we prepare for this project."

42. Mr. Boren coordinated with the SNRA on the proposed times, and participated in a telephone call on April 2, 2019, with Mr. Flannigan and Matt Phillips, the SNRA Landscape Architect. During this call Mr. Boren reiterated his various concerns about the Trail, including the routing of the Trail, the fact that the Trail as approved in the Decision Memo would stray outside the easement, the "overdeveloped" nature of the Trail and objection that the activities described in the Decision Memo would exceed or contradict the terms of the Deed regarding the easement.

43. Mr. Boren's concerns were summarized and additionally presented to the SNRA in a letter signed by Plaintiffs' legal counsel dated April 3, 2018.

44. As requested by the April 3 letter, the SNRA did respond in writing on April 9, 2019. That letter, signed by Mr. Flannigan, apologized that any "general illustration" of the trail in the Decision Memo "has caused confusion" and stated the trail "will be developed completely within the easement" across the Property. The letter denies that modified or additional decision documents are necessary, otherwise rejects Plaintiffs' concerns about the trail, and states that Mr. Flannigan "remain[s] committed to seeing this project completed on schedule" which according to "the construction contract" would allow "the contractor to begin work on the trail as soon as mid-May."

## COUNT ONE: SNRA ACT

45. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

46. The SNRA Act directs the Forest Service "to assure the preservation and protection of the natural, scenic, historic, pastoral, and fish and wildlife values and to provide for the enhancement of the recreational values associated therewith…." 16 U.S.C. § 460aa.

47. The Trail as presented by Defendants and approved in the Decision Memo is a "greenbelt" or "highly developed" pathway intended for high volumes of multi-directional traffic and significant passing.

48. The above-described Trail, type(s) and volume of use, and other factors are not consistent with and are contrary to the SNRA Act.

49. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or otherwise in violation of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

50. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from the approval and further implementation of the Trail project as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

## COUNT TWO: NEPA

51. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

52. NEPA is a purely procedural statute that does not mandate particular results, but is instead designed to create procedures to ensure federal agencies take a "hard look" at the environmental consequences of their actions. See, *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 639 (9th Cir. 2004).

53. Central to NEPA's procedural framework is the requirement that federal agencies prepare an "environmental impact statement" ("EIS") for "all major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). In some instances, a less rigorous statement may be prepared, known as an "environmental assessment" ("EA") which is a "concise public document that briefly provides sufficient evidence and analysis for determining whether to prepare an EIS…" 40 C.F.R. § 1508.9.

54. The NEPA implementing regulations provide for an even less rigorous review for a "category of actions" which have been deemed to not have individual or cumulative effects on the human environment sufficient to warrant preparation of either an EA or an EIS. 40 C.F.R. § 1508.4. An agency's assertion that an action falls within this category is referred to as a "categorical exclusion" which, depending on the specific action, may be explained in a document called a "decision memo."

55. Even when an action falls within a categorical exclusion, the agency must conduct a separate step in the analysis to rule out the possibility that one or more "extraordinary circumstances" are present. If extraordinary circumstances are present and related to the proposed action, the agency must conduct additional analysis and documentation in an EA or EIS. 36 C.F.R. § 220.6(a).

56. As reflected in the Decision Memo, the SNRA has invoked a categorical exclusion in approving the Trail project.

57. The Trail project includes numerous actions, features, and potential impacts to affected resources so as to preclude its approval via the truncated categorical exclusion mechanism.

58. A categorical exclusion cannot be properly relied upon to approve construction of a new 4.5 mile route involving vegetation removal, ground-disturbing activity and environmentally-sensitive areas, but even if it could the Trail that Defendants' now state they will construct is not the same Trail approved in the Decision Memo.

59. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or otherwise in violation of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

60. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from the approval and further implementation of the Trail project as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

**COUNT THREE:  NFMA**

61. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

62. Under NFMA, Forest Service actions must be consistent with the governing Forest Plan.  16 U.S.C. § 1604(i).

63. The governing Sawtooth Forest Plan includes various provisions applicable to the Trail project.  By way of illustration, not limitation, Plan Objective REST02 directs that in Riparian

Conservation Areas "new recreation facilities and trails" effects be mitigated when a trail "must be located" in the RCA, but that "[w]here reasonable and practicable alternatives exist, new recreation facilities and trails should be located outside of RCAs."

64. The Trail project, as approved by Defendants in the Decision Memo, traverses multiple RCAs despite the availability of reasonable and practicable alternatives. The Trail project is not consistent with the Sawtooth Forest Plan.

65. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or otherwise in violation of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

66. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from the approval and further implementation of the Trail project as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

## COUNT FOUR: CONSERVATION EASEMENT

67. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

68. The Conservation Easement Deed provides limited authorization to Defendants to recognize a right-of-way for the public to use as a trail, for the specific uses of snowmobile, snow grooming equipment, bicycle, horse and foot travel, and for the erection of signs to delineate the public use areas where needed.

69. The Conservation Easement Deed does not authorize trail construction or uses beyond those explicitly stated in the preceding paragraph.

70. Any rights in the United States created by the Deed relating to a public trail are confined to the area enumerated in Exhibit D to the Deed.

71. The Trail as presented by Defendants and approved in the Decision Memo exceeds these limitations and is contrary to and in excess of the authority granted to Defendants under the Deed.

72. Defendants' April 9, 2019 letter asserts the Trail "will be developed completely within the easement" across the Property but that assertion contradicts the Decision Memo and has not been documented or formally authorized in a subsequent decision document(s).

73. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or otherwise in violation of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

74. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from the approval and further implementation of the Trail project as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

**COUNT FIVE: APA**

73. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

75. Defendants' failure(s) described above to comply with the SNRA Act, NEPA, NFMA, and the Deed are arbitrary, capricious, or otherwise not in accordance with law; contrary to constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; short of statutory right; or otherwise in violation of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

76. Defendants' actions described above are made reviewable through the APA and are arbitrary, capricious, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations; without observance of procedure required by law; or otherwise in violation of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

77. Plaintiffs have suffered, and will continue to suffer, harm and injury to their legal interests arising from the approval and further implementation of the Trail project as a result of the allegations contained in this claim for relief, and these injuries will go unredressed absent judicial relief.

## COUNT SIX: DECLARATORY JUDGMENT

78. Plaintiffs hereby incorporate by reference each statement and allegation previously made.

79. There exists an actual controversy within the Court's jurisdiction between the parties, and Plaintiffs have appropriately and sufficiently requested that the Court declare the rights and other legal relations of the parties as they relate to the Trail project in accordance with the Declaratory Judgment Act.

80. The aforementioned declaration is properly requested and will aid and potentially conserve the resources of the parties and the Court, by potentially limiting or eliminating the need for further litigation and/or affecting the future development of the Trail project in a manner that will best serve the statutory and other interests addressed herein.

## REQUEST FOR RELIEF

Wherefore, having alleged the above-described violations of law, Plaintiffs respectfully request judgment in their favor on each and every claim alleged herein, and request that the Court rule, adjudge, declare and grant relief as follows:

1. Declare unlawful and set aside the Decision Memo;

2. Remand the applicable matters in the Decision Memo and Trail project for further analysis and action in accordance with applicable law;

3. Issue declaratory relief which prescribes or otherwise addresses the rights and other legal relations of the parties;

4. Enter such temporary, preliminary, permanent or other injunctive or equitable relief as the Court deems appropriate;

5. Award the Plaintiffs their reasonable fees, costs, and expenses of litigation as allowed by the Equal Access to Justice Act, 28 U.S.C. § 241 *et seq.* and other applicable law or rule of court; and

6. Grant such further and additional relief as the Court deems just and proper.

DATED this 9th day of April, 2019.

/s/Paul A. Turcke
Paul A. Turcke, ID Bar No. 4759
MSBT Law, Chtd.
7699 West Riverside Drive
Boise, ID 83714
Tel: 208-331-1800

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF – Page 17

                Email: pat@msbtlaw.com
                Of Attorneys for Plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF – Page 18