UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAWTOOTH MOUNTAIN RANCH LLC, LYNN ARNONE, DAVID BOREN,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF AGRICULTURE; SONNY PERDUE, Secretary of Agriculture; UNITED STATES FOREST SERVICE; SAWTOOTH NATIONAL FOREST; JIM DEMAAGD, Forest Supervisor; SAWTOOTH NATIONAL RECREATION AREA; KIRK FLANNIGAN, Area Ranger; FEDERAL HIGHWAY ADMINISTRATION; DEAN A UMATHUM, Contracting Officer,<br><br>Defendants. | Case No. 1:19-CV-00118-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Plaintiffs challenge the approval of, and any actions associated with, the proposed Stanley to Redfish Trail ("Stanley/Redfish Trail"), as described in the Decision Memo signed on June 6, 2017, by Kirk Flannigan, the Area Manager of the Sawtooth National Recreation Area. The proposed Stanley/Redfish Trail will include a segment of over one mile that crosses private property owned by Plaintiffs (the Property). The United States was granted the right to permit public use of a strip of land to be utilized as a trail, via the grant of an easement over the Property.

Plaintiffs' First Amended Complaint includes three claims brought under the Quiet Title Act (QTA) and asserted against the United States, the Federal Highway Administration (FHA), and Dean A. Umathum. The first claim concerns the boundaries of the easement, while the other two quiet title act claims concern different aspects of the scope of the easement. At issue with Defendant's motion is Claim One, in which Plaintiffs assert they are "entitled to an order of this Court quieting title to their Property confirming that the Trail may not pass through areas of the Property that are outside of the Easement boundary."

Defendants seek dismissal of Claim One in Plaintiffs' First Amended Complaint for lack of subject matter jurisdiction and dismissal of the FHA and Dean Umathum, who are named as Defendants in claims one, two and three.[1] On December 19, 2019, the Court

---

[1] The Government concedes the Court has jurisdiction over the United States with respect to Claims Two and Three under the QTA, which concern the scope of the easement and the attendant rights to develop the easement as a trail. The Government seeks dismissal of only the FHA and Dean Umathum from these two claims.

heard oral argument on the motion. After careful consideration of the parties' arguments and written memoranda, the record, and relevant authority, the Court will grant Defendants' motion to dismiss.

## FACTS

Plaintiffs' Property is located in Custer County, Idaho, adjacent to the southern end of Stanley and westward of State Highway 75, in a contiguous parcel including all or part of Sections 4, 5, 8, 9, 10, 15, 16, and 17 of T.10 N., R. 13 E., Boise Meridian. The Property consists of approximately 1,781.07 acres, all of which lies within the Sawtooth National Recreation Area (SNRA). Plaintiffs Arnone and Boren acquired the Property in the fall of 2016. The historic and current use of the Property is cattle ranching. Currently, Plaintiffs conduct a livestock and ranching operation on the Property.

A Conservation Easement Deed dated May 10, 2005, recorded as Instrument 231391 on May 20, 2005, in the real property records of the Custer County Recorder's Office, granted an easement in the Property to the United States. Among its various purposes, the Conservation Deed grants a public access easement (the Easement) across a portion of the Property. The Easement, defined in Part VI section K of the Conservation Deed, states:

> Nothing herein contained shall be construed as affording the public access to any portion of the Property except that the United States is hereby granted the right to permit public use of the following:
> (1) A strip of land to be utilized as a trail in that portion of the Easement area within Secs. 9, 15, and 16, as shown on

**MEMORANDUM DECISION AND ORDER - 3**

> Exhibit D, attached hereto and made a part hereof. The total right-of-way width of the trail easement shall be 30 feet. The following uses are allowed on the trail: snowmobile, snow grooming equipment, bicycle, horse, and foot travel. The Grantee may erect appropriate signs to delineate the public use areas where needed.
> (2) A strip of land along Valley Creek, to be utilized for foot travel only, extending from the centerline of Valley Creek to point parallel and being 20 feet distant beyond each mean high water line of Valley Creek. The Grantee may erect appropriate signs to delineate the public use areas where needed.

Second Decl. of Boren, Ex. A, Conservation Deed at 6. (Dkt. 34-1.) The last page of the Conservation Deed, Exhibit D, is a map depicting the Easement demarcated by a dark line identified in the Legend as the "Trail Easement," which would be the location of the Stanley/Redfish Trail traversing the Property.

In early 2014, the United States Forest Service announced its intent to construct and designate a trail approximately 4.5 miles long connecting the town of Stanley to the Redfish Lake entry station. Roughly 1.5 miles of the proposed Stanley/Redfish Trail runs through the Property. The Stanley/Redfish Trail project was summarized and published in the Sawtooth National Forest's Schedule of Proposed Actions in January 2014 and was made available for public comment. In conjunction with the proposed action, the Forest Service released a map, which depicted the location of the proposed trail along its entire length, including the portion traversing the Property (the February 2014 Map). Mr. Flannigan, the SNRA Area Manager, signed a Decision Memo dated June 6, 2017, which approved construction of the trail as presented in the proposed action, and the Decision Memo included the February 2014 map to illustrate the route.

**MEMORANDUM DECISION AND ORDER - 4**

There is no dispute that the February 2014 Map depicts the Stanley/Redfish Trail route crossing the Property outside the boundaries of the Easement. The 2017 Decision Memo states, however, that the 1.5 miles crossing private property will be constructed "on a Forest Service trail easement." Later electronic communications in 2017 and 2018 between the SNRA and Plaintiffs included additional mapping, depicting the Stanley/Redfish Trail exiting the eastern boundary of the Property consistent with the illustration in Exhibit D to the Conservation Deed, and within the boundaries of the Easement.

On April 9, 2019, Mr. Flannigan responded in writing to Plaintiffs' concerns regarding the boundaries of the proposed Stanley/Redfish Trail. Mr. Flannigan acknowledged that the trail alignment depicted in the February 2014 Map as reproduced in the 2017 Decision Memo did not exactly follow the boundaries of the Easement, and he expressed his apologies that any "general illustration" of the Stanley/Redfish Trail in the Decision Memo "has caused confusion." Mr. Flannigan stated the trail "will be developed completely within the easement" across the Property, explaining that the map included within the Decision Memo was "not an engineering plan or survey plat." Mr. Flannigan represented that trail construction drawings, which had been e-mailed to Plaintiff Boren on May 29, 2018, "should further assuage your concern as it assures that the trail will only be located within the easement that crosses the private parcel." Boren 2d Decl. ¶ 22, Ex. K. (Dkt. 34-2.)

The FHA is a federal agency within the United States Department of Transportation. As the agency responsible for helping state and local governments in the

**MEMORANDUM DECISION AND ORDER - 5**

design, construction, and maintenance of the Nation's highway system and various federally owned lands, the FHA is in charge of the construction of the proposed Stanley/Redfish Trail. Defendant Dean Umathum is the FHA's Contracting Officer for the Trail.

The construction contract awarded through the FHA contains maps depicting the location of the Stanley/Redfish Trail. The FHA's construction contract includes two depictions of the trail. The first graphic illustration is of the entire length of the Stanley/Redfish Trail as portrayed in the February 2014 Map and reproduced in the 2017 Decision Memo, which deviates from the easement boundaries. However, more detailed GPS maps contained within the construction drawings depict the trail staying within the boundaries of the Easement. Boren 2d Decl. ¶ 24, Ex. L. (Dkt. 34-2.) Despite the more detailed maps, Plaintiffs assert that the number of cattle gates depicted for "Section D" of the construction drawings and plans is two gates short of the six required if the Stanley/Redfish Trail follows the trajectory of the Easement. *Id.* ¶¶ 24, 25.

[Intentionally Blank due to spacing on next page]

The comparison below illustrates the route of the easement granted and portrayed in Exhibit D to the Conservation Easement Deed, and the illustration of the trail's route depicted by the February 2014 Map, as reproduced in the June 6, 2017 Decision Memo:

| SCOPING MAP – FEBRUARY 2014 | DECISION MEMO P. 2 – JUNE 6, 2017 | CONSERVATION DEED EX. D – MAY 10, 2005 |
|---|---|---|

2

---

² The dotted red line in the third panel, which joins the two solid black lines, illustrates the mistake in the trail route depicted in the February 2014 Map and its reproduction in the 2017 Decision Memo. The Conservation Deed granted only the strips of land illustrated by the solid black lines.

**MEMORANDUM DECISION AND ORDER - 7**

# ANALYSIS

Based upon the facts set forth above, Plaintiffs contend the Court has jurisdiction over Claim One of the First Amended Complaint, because the United States' conflicting positions and incorrect illustration of the trail route constitute a cloud on Plaintiffs' title to the Property. Plaintiffs assert also that the FHA and Dean Umathum are properly included as named parties in the lawsuit, because their inclusion does not hinder the purposes of the QTA; the FHA is directly responsible for construction of the trail; and, the FHA and Dean Umathum are agents of the United States.

Defendants assert two arguments in support of their motion to dismiss: (1) the Court lacks jurisdiction under the Quiet Title Act over Claim One because there is no dispute regarding the physical boundaries of the trail easement; and (2) the Court lacks jurisdiction over the FHA and Dean Umathum because the only appropriate defendant under the Quiet Title Act is the United States. Each argument will be addressed in turn below.

1.  **Legal Standards Under Rule 12(b)(1)**

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) in one of two ways. *See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. *Id*. On the other hand, the defendant may launch a "factual" challenge, "attacking the existence of subject matter jurisdiction in fact." *Id*. When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider

the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987). When considering a factual attack on subject matter jurisdiction, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill*, 594 F.2d at 733). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine*, 704 F.2d at 1077)). In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733–35).

Defendants assert a factual attack with regard to Claim One of Plaintiffs' First Amended Complaint, and a facial attack against the inclusion of the FHA and Dean Umathum on Claims One, Two and Three.

## 2. Jurisdiction Under the Quiet Title Act (QTA)

The QTA, 28 U.S.C. § 2409a, is the "exclusive means by which adverse claimants can challenge the United States' claim to real property." *Block v. North Dakota ex. Rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983); *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009) ("This court has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA."). Congress waived sovereign immunity in the QTA, thereby allowing real property owners to bring suits against the government challenging the United States' interests. 28 U.S.C. § 1346(f) (providing that the district courts "shall have original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States"). When subject matter jurisdiction is challenged, the Court presumes lack of subject matter jurisdiction until the plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

For the Court to have jurisdiction under the QTA, two prerequisites must be met: (1) the United States must claim an interest in the property at issue; and (2) there must be a disputed title to real property between interests of the plaintiff and the United States. *Leisnoi, Inc. v. United States*, 267 F.3d 1019, 1023 (9th Cir. 2001) (citing *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999)). In construing the scope of the

QTA's waiver, the requirement that the title at issue be "disputed" is read narrowly. *Alaska v. United States*, 201 F.3d 1154, 1164–65 (9th Cir. 2000). For a title to be disputed for the purposes of the QTA, the United States must have adopted a position in conflict with a third party regarding that title. *See id.; Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014); *Nielson v. United States, Bureau of Land Mgmt.*, No. 4:16-cv-00216-REB, 247 F. Supp. 3d 1152, 1156 (D. Idaho 2017). This requires a formal, or unequivocal, assertion of ownership by the United States adverse to another party claiming a competing interest in the same property.

Plaintiffs argue there is a dispute because the 2017 Decision Memo constitutes formal agency action indicating the United States may be claiming title to property outside the boundaries of the Easement, thereby placing a cloud on Plaintiffs' title. Plaintiffs assert they are "entitled to an order of this Court quieting title to their Property confirming that the Trail may not pass through areas of the Property that are outside of the Easement boundary." (Dkt. 29 ¶ 92.) Plaintiffs declare that Defendants have "put forth multiple documents indicating that the Trail will be routed outside of the defined Easement boundary," (Dkt. 29 ¶¶ 89-92), citing: the February 2014 Map, which depicts a portion of the Stanley/Redfish Trail crossing sections of the Property outside the boundaries of the Easement; the 2017 Decision Memo, which includes a copy of the February 2014 Map; preliminary flagging for construction purposes with markers crossing parts of the Property outside the boundaries of the Easement; and, the construction contract containing the February 2014 Map.

Plaintiffs argue the United States' conflicting positions constitute evidence of a disputed title that invokes the Court's jurisdiction pursuant to 28 U.S.C. § 1331. In contrast, the United States argues that, because it does not dispute the physical boundaries of the easement, it does not claim an interest adverse to Plaintiffs and therefore the Court lacks jurisdiction with respect to Claim One.

Under the facts set forth in the Amended Complaint and upon review of the documents in the record, Plaintiffs have not met their burden to establish jurisdiction under the QTA.[3] The Court finds the facts here are analogous to those in *Alaska v. United States*, in which the State of Alaska sought to quiet title to three riverbeds. But, as to one of the river beds—the Black River riverbed—the United States had never "expressly asserted a claim" of ownership. 201 F.3d at 1164. Even though the United States did not disclaim its interest in the riverbed, and reserved the right to make a claim to the riverbed in the future, the court reasoned that "whatever dispute there may be, it has not yet occurred," and concluded that "[a] title cannot be said to be 'disputed' by the United States if it has never disputed it." *Id*. at 1165. Because the title to the riverbed was not

---

[3] Plaintiffs contend that the jurisdictional issue and substantive claims with respect to Claim One are intertwined such that the resolution of the jurisdictional question depends upon disputed factual issues going to the merits, and is not appropriate to decide on a motion to dismiss. The Court disagrees, finding the pertinent acts undisputed. The United States acknowledges that the February 2014 map does not correctly depict the accurate Stanley/Redfish Trail route across Plaintiffs' Property. The United States does not dispute that Exhibit D to the Conservation Easement Deed correctly depicts the Easements' physical boundaries. The Court is therefore left to resolve whether the statements made by the United States vis-à-vis its illustrative map constitute sufficient evidence to create a disputed title under relevant Ninth Circuit authority.

**MEMORANDUM DECISION AND ORDER - 12**

disputed for purposes of the QTA, the court remanded for the district court to dismiss the claim as it related to the Black River for lack of subject matter jurisdiction. *Id*.

The same was not true with respect to the two other riverbeds the court addressed, those of the Nation and Kandik Rivers. The court found the United States "did in fact actively assert a claim of ownership" in an earlier administrative law proceeding that the rivers were not navigable at statehood and therefore belonged to the United States. *Id.* at 1158. Consequently, the court held there was "no question that the United States did actively assert a claim of ownership" in a "formal, considered way." *Id.* at 1160 - 63. The court held that, once the government "formally asserted a claim to an interest in land," a cause of action accrued such that a state government or other third party "is entitled to treat the land as 'real property in which the United States claims an interest….'" *Id.* at 1162.

The holding in the *Alaska* case with respect to the Black River is analogous here. *See also Nielson v. United States, Bureau of Land Management*, 247 F.Supp.3d 1152 (D. Idaho Mar. 22, 2017) (following *Alaska*). The parties do not dispute that the United States has an easement according to the May 10, 2005 Conservation Easement Deed. Further, the parties agree the boundaries and trajectory of the Easement are depicted correctly in Exhibit D to the deed. Plaintiffs received electronic communications in 2017 and 2018 from the SNRA which included mapping correctly depicting the trail's route along the trajectory of the Easement depicted in Exhibit D to the deed. In April of 2019, Mr. Flannigan authored a letter to Plaintiffs stating that the Government acknowledged the February 2014 Map depicted the trail's route incorrectly, and expressly disavowed

any intent to locate the trail outside the boundaries of the Easement. (Dkt. 34-2.) The detailed construction drawings depict the location of the Stanley/Redfish Trail within the Easement's boundaries, a fact Plaintiffs do not dispute.[4] Finally, the United States in its motion represents that it does not dispute the physical boundaries or the trajectory of the Easement, and it does not intend to construct the trail outside of those boundaries.

While the 2017 Decision Memo may have been a formal action, its sole purpose was to authorize specific construction activities pursuant to the authority granted in Title 36 of the Code of Federal Regulations, Section 220.6. That regulation allows for certain actions to be categorically excluded from documentation in an EIS or EA upon a finding of "no extraordinary circumstances related to the decision that may result in a significant individual or cumulative environmental effect." The determination that the construction of the trail fell within the parameters of a categorical exclusion is the "action" taken—in other words, the Decision Memo did not contain any statements asserting a formal claim of ownership to private property, other than an affirmative assertion that a portion of the project would be located on a "trail easement" on privately owned property. The only document of ownership is the Conservation Deed, which sets forth the parties' respective ownership rights.

---

[4] Plaintiffs assert that preliminary flagging, and the contractor's request to eliminate two gates, establish the United States' claim of ownership to Property outside the Easement boundaries. However, it is undisputed that the construction drawings depict the correct trail boundaries; the trail has not been constructed; and, the United States has not formally disputed the Easement boundaries.

**MEMORANDUM DECISION AND ORDER - 14**

Although Plaintiffs allege (and the United States does not contest) that there are conflicting graphic depictions of the Stanley/Redfish Trail route, the Court finds the illustrations are insufficient to raise a plausible inference that the United States disputes the physical boundaries of the Easement and claims a formal ownership interest to land outside the Easement's physical boundaries. Here, like the United States in *Alaska* with regard to the Black River riverbed, the government clearly and unequivocally represents to the Court that it does not dispute the boundaries of the Easement, and has no intent to deviate from the same when constructing the trail. *See Mills v. United States*, 742 F.3d 400, 405–06 (9th Cir. 2014) ("because the United States does not currently dispute the existence of a[]…right-of-way," the plaintiff's action did not meet the QTA's requirement that "title be disputed.").

The Court finds the uncertainty Plaintiffs allege the February 2014 map and its later reproduction in the 2017 Decision Memo caused is not sufficient to create a dispute regarding legal title to property outside the Easement's boundaries. While the early map may have led to some ambiguity, several cases suggest that section 2409a(f), which defines when a cause of action accrues under the QTA, is not triggered when the United States' claim is merely ambiguous or vague. *State of Cal. ex rel. State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 397 (9th Cir. 1985) (citing *Poverty Flats Land & Cattle Co. v. United States*, 706 F.2d 1078 (10th Cir. 1983); *Peterson v. Morton*, 465 F.Supp. 986 (C.D. Nev. 1979), *vacated on other grounds*, 666 F.2d 361 (9th Cir. 1980)); *Michel v. United States*, 65 F.3d 130 (9th Cir. 1995). Although the cases cited concern

the accrual of a cause of action for statute of limitations purposes under the QTA, the holdings are instructive.

For instance, in *Yuba Goldfields*, the court explained that the QTA's statute of limitations is construed strictly, and a cause of action does not accrue unless the United States' "clear interest is evidenced by" the existence of a federal interest in property. *Yuba Goldfields*, 752 F.2d at 397. In *Yuba Goldfields*, the United States' interest in the disputed property was evidenced by the existence of quitclaim deeds, which constituted a "cloud" on the State of California's title to the same property. 752 F.2d at 397. The court in *Poverty Flats* held that, to signify the accrual of a cause of action, the United States' interest must be "so clear that it would have been unreasonable for the plaintiff to believe otherwise." *Poverty Flats Land & Cattle Co. v. United States*, 706 F.2d at 1079. And in *Michel v. United States*, the court found that a plaintiff's cause of action to quiet title in an easement across government land accrues only when the government, "adversely to the interests of plaintiffs, denie[s] or limit[s] the use of the roadway for access to plaintiffs' property." *Michel*, 65 F.3d 130, 132 (9th Cir. 1995) (quoting *Werner v. United States*, 9 F.3d 1514, 1516 (11th Cir. 1993)).

The absence of any formal assertion of ownership by the United States, other than via the recorded Conservation Easement Deed, "presents a practical impediment to Plaintiff[s]." *Nielson v. United States, Bureau of Land Management*, 247 F.Supp.3d 1152, 1157 (D. Idaho Mar. 22, 2017). The fact that the United States has never "expressly asserted a claim" of ownership was dispositive in *Alaska*, foreclosing further inquiry, as it does here. *Id*. at 1165. Mere wishful thinking by the Government, or ill-conceived

illustrations in this case, does not amount to a formal assertion of a legal right of ownership adverse to another. In light of the United States' position, both before the Court[5] and as illustrated by the construction detail drawings, as well as its stated intent in written correspondence to Plaintiffs that construction of the trail would remain within the easement's boundaries, Claim One of Plaintiffs' First Amended Complaint does not meet the QTA's requirement that title "be disputed." The QTA's waiver of sovereign immunity is therefore inapplicable to this claim. *Mills*, 742 F.3d at 406.

Nonetheless, Plaintiffs argue the Court should require the United States to file a disclaimer under 28 U.S.C. § 2409a(e). That section states:

> If the United States disclaims all interest in the real property or interest therein adverse to the plaintiff at any time prior to the actual commencement of the trial, which disclaimer is confirmed by order of the court, the jurisdiction of the district court shall cease unless it has jurisdiction of the civil action or suit on ground other than and independent of the authority conferred by section 1346(f) of this title.

However, Section 2409a(e) unequivocally presumes the Court has jurisdiction over the matter in the first instance. *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1192 (9th Cir. 1999) ("Subsection (e)…does not purport to confer jurisdiction; it merely provides that jurisdiction ceases when the United States files a disclaimer of title."). The Court's conclusion that it does not have jurisdiction renders section 2409a(e) inapplicable. And,

---

[5] The Court notes that a contrary position later taken by the United States would be subject to application of the judicial-estoppel doctrine, which would prevent the United States from taking a position inconsistent with its position here. *See Crisell v. T-Mobile USA, Inc.*, No. 1:13-CV-00134-BLW, 2014 WL 3748317, at *6 (D. Idaho July 28, 2014) (setting forth elements of judicial-estoppel doctrine).

**MEMORANDUM DECISION AND ORDER - 17**

there is no requirement in section 2409a(e) that the Court order the United States to disclaim an interest when it does not claim one to begin with.

The Court therefore finds Plaintiffs have not set forth plausible facts establishing a conflict in title between the United States and Plaintiffs with regard to the Property outside of the Easement's boundaries. Accordingly, the Court lacks jurisdiction over Claim One.

### 3. Proper Parties Under the Quiet Title Act

The United States contends Plaintiffs have improperly named the FHA and Dean Umathum, the FHA's contracting officer, in Claims One, Two and Three. They are correct. The proper defendant under the QTA is the United States. The QTA, which waives sovereign immunity only as to the United States, is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). The Act expressly provides for relief against the United States. *See* 28 U.S.C. § 2409a(a); *Block*, 461 U.S. at 280, 284. And, courts have recognized the United States is an indispensable party under the QTA. *See Lee v. United States*, 809 F.2d 1406, 1411 (9th Cir. 1987) (holding that plaintiffs "can only properly establish their asserted entitlement to the disputed lands in direct proceedings against the United States" under the QTA.). Thus, whether the Defendant agencies (and their employees) are suable entities, *Blackmar v. Guerre*, 342 U.S. 512, 514 (1952), they are not proper parties to an action under the QTA. *Block*, 451 U.S. at 284–86. *Petroff v. Schafer*, No. CV08-1971-PHX-NVW, 2009 WL 891024, at *2 (D. Ariz. Apr. 1, 2009).

If the QTA claims had been brought against the FHA and Dean Umathum without naming the United States, the Court would be required to construe the action as against the United States for the purposes of the QTA. *Saving Am.'s Mustangs v. Bureau of Land Mgmt.*, No. 3:16-CV-00733-RCJ-VPC, 2017 WL 1371261, at *2 (D. Nev. Apr. 13, 2017) (citing *Wright v. Gregg*, 685 F.2d 340, 341–42 (9th Cir. 1982), which reversed the district court's dismissal of a QTA claim for lack of jurisdiction when the plaintiff failed to name the United States as a defendant.). But, if requested to do so, the Court may substitute the United States for the federal agency when a federal agency is incorrectly named as a defendant in a quiet title action. *Id.*; *see also Gardner v. Stager*, 892 F. Supp. 1301, 1302 (D. Nev. 1995), *aff'd*, 103 F.3d 886 (9th Cir. 1996) (finding federal officials named as individual defendants in a quiet title action to be nominal parties, and dismissing the individual federal defendants upon the appearance of the United States). In other words, the FHA and Dean Umathum are not necessary parties, and may be dismissed.[6]

## CONCLUSION

The Court concludes it lacks subject matter jurisdiction over Claim One of the Amended Complaint, and that Defendants Federal Highway Administration and Dean A. Umathum should be dismissed as defendants with regard to Claims Two and Three asserted under the QTA.

---

[6] Plaintiffs have not asserted that the FHA and Dean Umathum are proper defendants with regard to their other claims brought under NEPA, the NFMA, and the SNRA Act.

# ORDER

## NOW THEREFORE IT IS HEREBY ORDERED:

1) Defendants' Motion to Dismiss (Dkt. 32) is **GRANTED**.

DATED: January 13, 2020

Honorable Candy W. Dale
United States Magistrate Judge