Erika E. Malmen, Bar No. 6185
EMalmen@perkinscoie.com
Robert A. Maynard, Bar No. 5537
RMaynard@perkinscoie.com
Kaycee M. Royer, Bar No. 10810
KRoyer@perkinscoie.com
PERKINS COIE LLP
1111 West Jefferson Street, Suite 500
Boise, ID  83702-5391
Telephone:  208.343.3434
Facsimile:  208.343.3232

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAWTOOTH MOUNTAIN RANCH LLC, LYNN ARNONE, and DAVID BOREN,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF AGRICULTURE; SONNY PERDUE, Secretary of Agriculture; UNITED STATES FOREST SERVICE; SAWTOOTH NATIONAL FOREST; JIM DEMAAGD, Forest Supervisor; SAWTOOTH NATIONAL RECREATION AREA; KIRK FLANNIGAN, Area Ranger; DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION,<br><br>*Defendants.* | Case No. 1:19-CV-0118-CWD<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## INTRODUCTION

As was addressed in connection with Plaintiffs' Motion for Preliminary Injunction

(Dkt. 62), the Defendants should be enjoined from constructing the Stanley to Redfish Trail

("Trail") without first complying with the mandates of the Endangered Species Act ("ESA"),

Clean Water Act ("CWA") and National Environmental Policy Act ("NEPA") because the

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION - 1**

balance of the equities tips heavily in favor of protecting threatened and endangered species and preventing potential harm to the environment.  In a thinly veiled attempt to conjure up an inequity that tips in their favor, Defendants now move for a temporary restraining order and preliminary injunction to enjoin Plaintiffs "and their associates" from interfering with construction of the Trail.  The Defendants have not identified any conduct by Plaintiffs that warrants such an injunction.  Instead, they seek an injunction based on the alleged conduct of David Boren's brother, Michael Boren, who they claim flew his helicopter close to the ground near the Stanley airport while a construction crew was working in the area on Saturday, June 20. Rule 65 does not allow for the enjoining of non-parties, nor does it contemplate the issuance of an injunction that requires a party to enjoin a non-party.  As the saying goes, David Boren is not his brother's keeper and injunctive relief requiring him to fill this role is inappropriate and beyond the scope of Rule 65.

Given the extremely short time frame in which Defendants have requested the Court to allow Plaintiffs to respond to the present motion, Plaintiffs respectfully reserve their rights to prepare and file a further response according to any briefing schedule for the motion set by the Court or allowed under the Federal Rules of Civil Procedure and Local Rules, in the absence of the Court setting a briefing schedule.

## ARGUMENT

I.      **Defendants are not entitled to injunctive relief because the Court cannot enjoin non-parties, nor can it compel parties to enjoin the conduct of non-parties.**

"A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1985).  Thus, Rule 65 does not authorize a court to "enjoin the activities of individuals or entities that are not parties to this litigation." *Bruno v. Potts*, No. 17-CV-07225-YGR, 2018 WL 3207908, at *1 (N.D. Cal. June 29, 2018).

Defendants' motion is based on the alleged conduct of Michael Boren, not Plaintiffs. Michael Boren is not a party to this action, and therefore cannot be enjoined. Defendants attempt to circumvent the limitations of Rule 65 by asking this Court to issue an injunction that would effectively require Plaintiffs to enjoin the conduct of non-parties. Defendants cite no authority that supports their proposed workaround to the rule against enjoining a non-party.

Although an injunction can bind "persons who are in active concert or participation with" the parties, F.R.C.P. 65(d), Defendants have not produced evidence showing that Plaintiffs and Mike Boren were acting in concert with one another. They have only offered assumptions and speculation. *See* Declaration of David Coyner (Dkt. 78-2), Ex. A. at p. 4 ("With all of the debate and ongoing lawsuit that is waiting for determination by District Judge Dale, I *assumed* it was the Landowner or his representative out checking on us.") (emphasis added); p. 7 ("I don't know what the intent was of whoever was in the helicopter but I'm sure they were observing what we were doing.").[1] This speculation does nothing to show that Plaintiffs and Mike Boren were acting in concert with one another. Because Defendants have not identified any conduct by Plaintiffs that would warrant injunctive relief, their motion should be denied.

## II.     Defendants have not established a likelihood of success on their proposed nuisance and trespass claims.

In arguing that they are likely to succeed on the merits of their proposed counterclaims, Defendants oversimplify the status of the litigation and the nature of their proposed claims. First, Defendants' argument is premised on the assumption that the Court will grant them leave to amend to assert these counterclaims. Leave may not be granted for any number of reasons. For example, the deadline for amending pleadings has passed and Defendants' motion for leave to amend fails to identify good cause. Scheduling Order (Dkt. 46). In addition, the proposed counterclaims arise out of alleged conduct by a non-party that has nothing to do with the merits

---

[1] Although a voluntary statement was provided to the Custer County Sheriff, Defendants provide no evidence regarding the outcome of this report (e.g. a citation or criminal charges). The apparent fact that the Custer County Sheriff has taken no action in response indicates that the conduct at issue was not threatening, as Defendants claim.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION - 3**
LEGAL148626836.6

of this lawsuit (namely whether Defendants complied with the ESA, CWA, and NEPA).  *See* F.R.C.P. 13 ("A pleading must state as a counterclaim any claim that… arises out of the transaction or occurrence that is the subject matter of the opposing party's claim…").  Thus, it is entirely presumptuous for Defendants to assume that leave to amend will be granted, let alone that they will succeed on the merits of any currently unpled counterclaims.

Second, Defendants fail to establish how they will actually succeed on their claims. Despite asserting that they are likely to succeed on their proposed nuisance claim, Defendants fail to even identify the elements of this claim.  Their argument on the success of their proposed trespass claim is equally unavailing.  Defendants overlook the factual basis required to succeed on this claim.  Defendants argue that they could likely prevail on a trespass claim against Plaintiffs, yet they do not allege Plaintiffs committed the acts that give rise to this claim.  They claim it was Michael Boren who purportedly flew his helicopter near the Stanley airport. Further, Defendants rely on asserted common law elements of trespass that include "(1) an invasion, (2) which interferes with the right of exclusive possession of the land…." Memo. in Support of Defendants Motion for TRO, Dkt. 78-1, at 4-5.  Yet Defendants ignore that the federal government's interest here is limited to a trail easement across land owned by Sawtooth Ranch LLC.  As very recently stated by the Supreme Court of the United States, such an easement is a limited privilege to use the lands of another, and a *nonpossessory* interest, much less a right to exclusive possession.  *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, No. 18-1584, 2020 WL 3146692, at *7 (June 15, 2020).  Defendants have not established any "invasion" of the trail, nor any right of exclusive possession, particularly as against the Plaintiff owner of the land traversed by the limited trail easement that is the subject of this litigation.  Based on the facts they allege and the legal elements they assert, Defendants have no basis for a trespass claim against Plaintiffs.

**III.**     **The remaining preliminary injunction factors simply replough the same ground Defendants raised in opposition to Plaintiffs' motion for preliminary injunction.**

Defendants' arguments on the remaining preliminary injunction factors shed light on what this motion is really about; it is a less than subtle attempt to rehash the arguments raised in opposition to Plaintiffs' motion for preliminary injunction. Case in point, Defendants plainly state the conduct at issue provides further evidence of unclean hands, and therefore *Plaintiffs'* motion for preliminary injunction should be denied.  That this is an attempt at a second bite at the apple is further underscored by the repeated reference to the letter Plaintiffs' counsel sent to Hobble Creek Services, LLC, which was the basis of Defendants' "balance of the equities" argument in opposition to Plaintiffs' preliminary injunction motion. Dkt. 78-1, p. 2, 7.

The Defendants also repeat the same argument that the Trail is in the public interest, and therefore injunctive relief should be issued to ensure that construction of the Trail is in no way delayed.  This requested relief goes well beyond the alleged conduct giving rise to this motion; it instead seeks to hogtie Plaintiffs from mounting *any* challenges to the Trail by *any* means whatsoever (including seeking injunctive relief if it would have such an effect).  As discussed in the briefing in support of Plaintiffs' motion for preliminary injunction, ESA compliance cannot be circumvented by simply claiming that the public approves of a project.  *Cascadia Wildlands v. Scott Timber Co.*, 715 F. App'x. 621, 624 (9th Cir. 2017) ("In cases brought under the ESA, the balance of the hardships and public interest factors always tips in favor of protecting endangered species.").

The Forest Service not only failed to provide accurate information about the environment to the public and other federal agencies, the record shows that the Forest Service failed to adequately disclose important safety and other information to the public, including the comingling with bulls, the presence of six gates, difficulty in accessing the first 1.5 miles of the Trail, and the very close proximity of the Trail to the Stanley Airport runway.[2]  Further,

---

[2] The Court should recall that the contractor flagged two different routes for the Trail on Plaintiffs' property, and the true route was not confirmed by the Forest Service until Plaintiffs' asserted a Quiet Title Act claim based on same.  *See* Dkt. 44, pp. 11-12.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION - 5**

Defendants' excuse that they had safety concerns about the alternative route is belied by their own decision to move the 4.5 mile stretch of the Trail on public lands adjacent to Highway 75. Thus, the public interest does not weigh in favor of issuing injunctive relief that would prohibit Plaintiffs from challenging Defendants' failure to comply with the mandates of the ESA and other environmental laws.

Plaintiffs have endeavored to present and advocate in a diligent and responsible manner the facts, law and their genuine concerns in this case, but Defendants do not appear to want to proceed that way. Plaintiffs perceive a pattern of inequitable, unfair conduct on behalf of the Forest Service in this matter. The Forest Service initially offered to buy the Plaintiffs property. Second Boren Decl., Dkt. 34-1, ¶ 5. When Plaintiffs asked for details and discovered the trail was much bigger than expected (6.5 feet wide, 6" elevated gravel trail, 12 to 24-foot wide roadbed) and would irreparably compromise the amazing scenic views that so many people enjoy, Plaintiffs attempted to work with the Forest Service to find a better solution for everyone. Second Boren Decl., Dkt. 34-1, ¶¶ 6-12. Assurances from the Area Ranger that they would consider Plaintiffs' concerns and suggestions led Plaintiffs to believe that collaboration could result in a better trail. *Id.* After many months, with little time left before trail construction was expected to start, the Area Ranger finally came back to say that they would build the trail as planned, with no changes, no Environmental Analysis ("EA") under NEPA and no consideration of alternatives. *Id.* ¶ 12. Plaintiffs were left with no alternative but to seek legal remedies.

For the Defendants to repeatedly impugn Plaintiffs as "sleeping on their rights" or having "unclean hands" because they tried to collaborate instead of filing legal action earlier implies that the Plaintiffs should have never tried to negotiate in the first place. The Forest Service's apparent efforts to avoid disclosure of environmental and safety issues, their vehement response to any public scrutiny, and omission from the Administrative Record of important documents that should have been included do the public a disservice by forcing the first solution instead of

following the process and involving appropriate parties to find the best solution, before beginning construction.

It is ironic that the Forest Service wants to argue about equity and unclean hands when there are indications of a pattern of apparent omission, deception, obfuscation, and misrepresentation on behalf of the agency.  For example, the Forest Service has asserted that no other route is possible and that Idaho Transportation Department ("ITD") would not allow the alternative route to be built.  But they have provided no engineering study or Environmental Analysis that supports such claim.  And they have provided no evidence from ITD to support their claims.  Plaintiffs' conversations with ITD within the last 90 days indicate this assertion is also false.[3]  The Forest Service has asserted that the Redfish Recreation Complex Project does not even exist, and that it is not a related project when the Forest Service's own Statement of Proposed Actions has discussed the Trail and Complex as Phase I and Phase 2 of the same project since as early as 2015.  *Compare* Dkt. 66, p. 16 *to* MacLellan Decl., Dkt. 74-2, Ex. A, p. 9, Ex. B pp. 1-7, and Ex. C, p. 8.

The Forest Service's representation that the public wants the trail "in this location" is grossly misleading.  This is the *only* location that has been considered by the Forest Service.  The Forest Service has asserted there will be "no effect" to ESA listed species, even though they are conducting construction activities in designated critical habitat, and the record clearly shows a potential sediment discharge into Redfish Lake Creek and important wetlands.  AR 2592; AR 2594; AR 0296; Mitchell Decl., Dkt. 66-08 at ¶ 8.  As argued in Plaintiffs' briefing in support of their motion for preliminary injunction, the Forest Service was required to prepare a biological assessment and complete ESA section 7 consultation with NMFS (which they admit they did not do).  The Forest Service did not provide the so-called biological assessment to NMFS, let alone obtain NMFS's *written* concurrence as required by ESA regulations. *See* 50 C.F.R. § 402.14(b).

---

[3] The Court should recall that there is an existing roadbed for some portion of the Trail on Plaintiff's alternative route.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION - 7**

The Forest Service has asserted that the wetlands on Plaintiffs property are "seasonal" and "isolated," which (by Defendants' own admission) is false, Chariarse Decl., Dkt. 66-11, ¶ 4, and used that assertion to obtain a categorical exclusion from doing an Environmental Assessment under NEPA.

**IV.    Injunctive relief should not be granted because Defendants fail to specify what the requested injunction would actually prohibit.**

"[O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1086–87 (9th Cir. 2004). The requested injunctive relief is substantially broader than the alleged conduct underlying the motion. Defendants are not just seeking to enjoin Michael Boren from flying his helicopter near the construction site. They are seeking to enjoin *any* conduct that would delay construction of the Trail. Defendants cite the letter from Plaintiffs' counsel to Hobble Creek Services, LLC and the motions for preliminary injunction as examples of attempts to delay construction. Thus, Defendants appear to be seeking an injunction that would preclude Plaintiffs from prosecuting this action in any way shape or form. It goes without saying that such an injunction is impermissibly overbroad.

Even if the requested relief is limited to preventing people (Defendants do not specify who) from flying helicopters near the construction site (Defendants do not specify what a permissible distance would be), the motion is still impermissibly vague and overly broad. The requested relief fails to specify what the injunction actually prohibits and raises a number of questions as to the scope of the injunction. For example, who are Plaintiffs required to enjoin (e.g. relatives, friends, invitees, licensees, trespassers, etc.)? Are Plaintiffs required to prevent any and all aircraft from flying over their property? And if so, how are Plaintiffs supposed to satisfy this obligation? Are Plaintiffs required to enjoin aircraft from flying near the Stanley airport (where the incident is alleged to have occurred)? And again, how are Plaintiffs expected

to comply with such an obligation?  Are Plaintiffs enjoined from entering onto portions of their own property if Defendants perceive their presence as disruptive to construction?  Because Defendants do not reasonably specify that which would actually be prohibited by the injunction, their motion should be denied for this additional reason.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for a Temporary Restraining Order and Preliminary Injunction should be denied.  The motion is baseless on its face and Plaintiffs respectfully request the Court deny the motion without a hearing.

DATED:  June 25, 2020.                    **PERKINS COIE LLP**

By:   */s/ Erika E. Malmen*
     Erika E. Malmen
     EMalmen@perkinscoie.com
     Robert A. Maynard
     RMaynard@perkinscoie.com
     Kaycee M. Royer
     KRoyer@perkinscoie.com
     1111 West Jefferson Street, Suite 500
     Boise, ID  83702-5391

     *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 25, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Christine Gealy England
Christine.england@usdoj.gov

Marie Callaway Kellner
mkellner@idahoconservation.org

     */s/ Erika E. Malmen*
     Erika E. Malmen