UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAWTOOTH MOUNTAIN RANCH LLC, LYNN ARNONE, and DAVID BOREN,<br><br>                Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS J. VILSACK,[1] Secretary of Agriculture; UNITED STATES FOREST SERVICE; SAWTOOTH NATIONAL FOREST; JIM DEMAAGD, Forest Supervisor; SAWTOOTH NATIONAL RECREATION AREA; KIRK FLANNIGAN, Area Ranger; UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION,<br><br>                Defendants. | Case No. 1:19-cv-00118-CWD<br><br>**MEMORANDUM DECISION AND ORDER**<br><br>**RE: Quiet Title Act, Claims One and Two**[2] |

---

[1] Sonny Perdue is no longer Secretary of Agriculture. Because Mr. Perdue was sued in his official capacity, his successor, Thomas J. Vilsack, is substituted as a defendant pursuant to Fed. R. Civ. P. 25(d).

[2] Plaintiffs' claims under the Quiet Title Act are distinct from their environmental claims. Accordingly, the Court filed a separate memorandum decision and order addressing Claims Three through Nine. (Dkt. 50.)

**MEMORANDUM DECISION AND ORDER  - 1**

# INTRODUCTION

This case arises out of the United States Forest Service's acquisition of a Conservation Easement Deed in 2005 encumbering Plaintiffs' property, and the Forest Service's related efforts to develop a public trail connecting the town of Stanley with Redfish Lake in one of the most iconic recreation areas in Idaho – the Sawtooth National Recreation Area.

Currently, visitors to Stanley or Redfish Lake must use Highway 75 to travel between the two destinations. Upon completion of the 4.4 mile long public trail, of which approximately 1.5 miles traverses Plaintiffs' Property within the confines of an easement, travelers by foot, horseback, and bicycle will have an alternative, non-motorized transportation route during the summer between Stanley and the Redfish Lake entrance station.

Plaintiffs are opposed to construction of what they characterize as a "commuter trail" through their Property. Pls.' Mot. at 2. (Dkt. 114.) Plaintiffs contend the Forest Service and the Federal Highway Administration have exceeded the scope of the public access easement granted to the Forest Service by way of the 2005 Deed between the Forest Service and prior owners of the Property by engaging in "construction activities" inconsistent with the rights granted to the Government.

Plaintiffs filed this lawsuit on April 9, 2019. (Dkt. 1.) Before the Court are the parties' cross-motions for summary judgment and a related motion filed by Plaintiffs pursuant to Fed. R. Civ. P. 56(d). Considered here, apart from Plaintiffs' seven environmental claims, are Claims One and Two, brought pursuant to the Quiet Title Act

**MEMORANDUM DECISION AND ORDER - 2**

("QTA"), 28 U.S.C. § 2409a. Claim One seeks a declaration that Defendants have exceeded the scope of the Conservation Easement Deed, and Claim Two seeks a declaration that the proposed use of the Trail is incompatible with the Conservation Values and rights enumerated in the Conservation Easement Deed.

The Court conducted a hearing on the motions on September 8, 2021, and, following the hearing, requested supplemental briefing regarding the application of *Wilkins v. United States of America*, 2021 WL 4200563 (9th Cir. Sept. 15, 2021), if any, to the Plaintiffs' QTA claims. (Dkt. 128.) After fully considering the parties' arguments, briefing, supplemental briefing, administrative records, and applicable legal authorities, the Court finds it lacks subject matter jurisdiction over Claims One and Two, because these claims are time-barred under the QTA. The Court will deny Plaintiffs' motion for summary judgment and the related motion brought under Fed. R. Civ. P. 56(d), and grant Defendants' motion on these two claims, as explained below.

## FACTS[3]

Plaintiffs own or have ownership-related interests in real property in Custer County, Idaho, adjacent to the southern end of the town of Stanley, and westward of State Highway 75, in a contiguous parcel including all or part of Sections 4, 5, 8, 9, 10, 15, 16 and 17 of T.10 N., R. 13 E., Boise Meridian ("Property"). The Property is located within

---

[3] Unless otherwise indicated, the facts are taken from the Second Amended Complaint, and the administrative records submitted by the Forest Service and the Federal Highway Administration ("FHWA"). Citations to the Forest Service's record will be noted as AR, while citations to the Federal Highway Administration's record will be noted as FHWA AR. The respective administrative records are filed at Docket Nos. 93 and 98.

**MEMORANDUM DECISION AND ORDER - 3**

the Sawtooth National Recreation Area (SNRA), and consists of approximately 1,781.07 acres. Decl. of Boren ¶ 3. (Dkt. 11-2.)

The SNRA is located in south-central Idaho, covering more than 756,000 acres. (AR 1127.) The SNRA is a Congressionally-designated special area, created in 1972 "to assure the preservation and protection of the natural, scenic, historic, pastoral, and fish and wildlife values and to provide for the enhancement of the recreational values associated therewith …." 16 U.S.C. § 460aa. Redfish Lake and Little Redfish Lake are popular summer destinations located within the SNRA six miles south of the town of Stanley. (AR 1127.) The Redfish Lake Complex "is the single most popular destination in the SNRA. Its many facilities have the capability to host around 2,200 visitors during peak times in the summer months," and tourism in the area "is most active during the two month peak summer season in July and August." (AR 1048.) State Highway 75 connects Redfish Lake to Stanley, with high speed traffic and heavy summer traffic volumes. (AR 1128.) There currently is no alternative transportation route connecting Stanley and Redfish Lake during the summer. (AR 1128.)

In the early to mid-1990's, SNRA staff began discussing the idea of constructing a trail connecting Stanley and Redfish Lake to provide an alternate means of travel between the two areas. (AR 1126.) At that time, the Forest Service envisioned a trail that would allow for non-motorized summer travel, and serve pedestrians, bicyclists, and equestrians. (AR 0938.)

**MEMORANDUM DECISION AND ORDER - 4**

SNRA staff commenced with evaluating and negotiating the terms of a conservation easement with the Pivas,[4] Plaintiffs' predecessors in interest, in or about 2004. (AR 0666.)[5] The Forest Service engaged Bradford Knipe to appraise the proposed Conservation Easement in its entirety, which included a provision for a Public Trail Easement crossing the eastern portion of the Property. (AR 0685, 0698.) Mr. Knipe valued the Conservation Easement as it existed at that time at $1,840,000.00. (AR 0688 - 0689.) When conducting his evaluation, Mr. Knipe considered the impact of a "30 foot wide trail/snowmobile easement crossing the eastern portion of the subject property," noting that "an owner buyer would likely be concerned about the loss of privacy on the subject property and the probability of trespassing outside of the easement area by public users." (AR 0698.) Mr. Knipe appraised the Public Trail Easement portion of the Conservation Easement, which he described as "a greenbelt or public pathway easement," at $581,840.00. (AR 2824, 2825.)

On May 10, 2005, the United States, by and through the Secretary of Agriculture, and the Pivas, executed a Conservation Easement Deed encumbering the Property. The Deed was recorded in the records of Custer County on May 20, 2005, as record number 321391. (AR 0824.) The Pivas accepted $1,840,000.00 in exchange for the Conservation Easement. (AR 0824, 0825.)

---

[4] The Piva family, and various family trusts and partnerships, previously owned the Property. (AR 0824.) The Court refers to Plaintiffs' predecessors in interest as the Pivas.
[5] Forest Service staff conducted a field inspection, interviews, and other activities throughout 2004, as reflected on the Land Transaction Screening Process Summary. (AR 0666.)

**MEMORANDUM DECISION AND ORDER - 5**

Per the terms of the Conservation Easement Deed, the Pivas, as Grantors, agreed as follows: to "hereby grant and convey in perpetuity, with general warranty of title, unto the United States…all right, title and interest in the land described in Part II[6] below, except those rights and interests specifically reserved by the Grantors in Part III below and those affirmative obligations retained by Grantors in Part V below."

Part III of the Deed enumerates the reserved rights of the Pivas. These rights include:

> C. The right to prevent trespass and control access to the Property by the general public except for specific access rights granted to or acquired by the United States, including the access granted in Part VI, Section K of this Easement.

The access rights granted to or acquired by the United States and set forth in Part VI, Section K are as follows:

> K. Nothing herein contained shall be construed as affording the public access to any portion of the Property except that the United States is hereby granted the right to permit public use of the following:
>     (1) A strip of land to be utilized as a trail in that portion of the Easement area within Secs. 9, 15, and 16, as shown on Exhibit D, attached hereto and made a part hereof. The total right-of-way width of the trail easement shall be 30 feet. The following uses are allowed on the trail: snowmobile, snow grooming equipment, bicycle, horse, and foot travel. The Grantee may erect appropriate signs to delineate the public use areas where needed.
>     (2) A strip of land along Valley Creek, to be utilized for foot travel only, extending from the centerline of Valley Creek to point parallel and

---

[6] Part II is the Property Description, which incorporates the legal description and encumbrances of the Property set forth on Exhibit A to the Deed.

**MEMORANDUM DECISION AND ORDER - 6**

> being 20 feet distant beyond each mean high water line of Valley Creek. The Grantee may erect appropriate signs to delineate the public use areas where needed.

(AR 0833.)[7] Exhibit D is a map depicting the 30 foot wide right of way as it meanders through the Piva Ranch Property. (AR 0850.)[8]

After the parties executed the Conservation Easement Deed, Robert Piva authored a letter to Sara Baldwin, Area Ranger of the USFS-Sawtooth National Recreation Area, in May or June of 2005. (AR 0723 – 0726.)[9] In it, Mr. Piva objects to the inclusion of the Trail Easement in the Deed, indicating that the Pivas "would never have agreed to a summer use trail system across ranch property," because the "location and use of a summer trail system across Piva ranch property constitutes a significant government 'takings' due to loss of large tracts of grazing land." (AR 0725, 0726.) Mr. Piva explained that "[e]xtensive public use of the trail will effectively preclude use of grazing lands…on either side of the trail." (AR 0725.) Other concerns expressed by Mr. Piva included harassment of livestock by persons or dogs, as well as other liability issues. *Id.* One solution proposed was a land trade, while another solution was acquisition of "the

---

[7] Section K(1) is referred to by the parties as the Trail Easement. The entire project is referred to by the parties as the Trail Project, while the trail itself is referred to as the Trail, or the Stanley Redfish Trail. The Court will use these references as well.
[8] This is the same map considered by Mr. Knipe in the 2004 appraisal report. (AR 2824.)
[9] It is not clear when the letter was drafted, as it is undated other than a reference to "May 2005" in the Administrative Record index. From the letter's context, it may have been written sometime after June 9, 2005, as Mr. Piva refers to learning of the Trail Easement upon receiving an email from the Administrator of the SNRA, dated June 9, 2005, requesting permission to publish an announcement of the purchase of the Piva Ranch easement. (AR 0724.) A later email from Mr. Piva refers, however, to an "original letter…written to Area Ranger Sara Baldwin in May of 2005." (AR 0788.) There are no other letters from Mr. Piva addressed to Ms. Baldwin in the record, nor does the record contain a June 9, 2005 email from Ms. Baldwin to Mr. Piva.

**MEMORANDUM DECISION AND ORDER - 7**

trail site Piva bench lands" by the Government. (AR 0726.) Neither alternative came to fruition.

The Forest Service undertook efforts to implement the Trail Project in or about August of 2008, and began planning the Trail Project in 2012. (AR 0904, 0161, 1126.) The Stanley Redfish Trail, as proposed, was an improved six-and-one-half foot wide, 4.4-mile-long, gravel-paved, multi-use trail that would connect Pioneer Park in Stanley to the Redfish Lake Entrance Station. (AR 0294.)[10] Approximately 1.5 miles of the Trail is located within the 30-foot trail easement area on the Property. (AR 0294.) Before formal publication of the proposed Trail Project, Robert Piva wrote to Matt Phillips, the trail's architect, on March 30, 2014. (AR 0877.) In the email, Mr. Piva referenced the proposed "public hiking trail," reiterating that the Pivas would "never allow[] public access across our ranch when it is stocked with cattle…." (AR 0877.) The Forest Service later published the proposed Trail Project on July 1, 2014, in the Sawtooth National Forest's Schedule of Proposed Action. (AR 2648 – 2655.)

Plaintiffs[11] purchased the Property in the Fall of 2016, subject to the 2005 Conservation Easement Deed. Second Am. Compl. ¶ 79. (Dkt. 50.) Shortly after the purchase of the Property, the Forest Service notified Plaintiffs of the status of its plan to

---

[10] A future project was proposed to develop a two mile, fully accessible, multi-purpose, non-motorized public trail from the Redfish Lake Entrance Station to Redfish Lake, to "seamlessly connect Stanley and Redfish Lake." (AR 2664.) The notice of proposed action for Phase 2 of the Redfish to Stanley Trail was published by the Forest Service on July 1, 2015.

[11] Sawtooth Mountain Ranch, LLC, holds title to the Property, while Mr. Boren is the organizer and sole member of Sawtooth Mountain Ranch, LLC. He is married to Lynn Arnone. Second Am. Compl. ¶¶ 5 – 7. (Dkt. 50.)

**MEMORANDUM DECISION AND ORDER - 8**

construct the Stanley Redfish Trail. (AR 001.)[12] The Forest Service approved the Trail Project in a Decision Memo issued by Area Ranger Kirk Flannigan on June 6, 2017. (AR 0294-0304.)

Plaintiffs filed a complaint on April 9, 2019, seeking declaratory and injunctive relief against the Forest Service and its personnel. (Dkt. 1.) In addition to claims asserted under various environmental statutes, the complaint alleged the Forest Service was in violation of the Conservation Easement Deed, and Plaintiffs sought review under the Administrative Procedure Act, 5 U.S.C. § 706(2). On May 10, 2019, Plaintiffs filed a motion for preliminary injunction. Plaintiffs argued the Forest Service's actions were contrary to the terms of the 2005 Conservation Easement Deed.[13] On June 13, 2019, the Court issued a memorandum decision and order denying Plaintiffs' motion, explaining Plaintiffs failed to state a claim upon which relief could be granted because Plaintiffs did not bring suit pursuant to the Quiet Title Act, 28 U.S.C. § 2409a. (Dkt. 24.)

Plaintiffs filed an amended complaint on August 8, 2019, which asserted three claims under the Quiet Title Act. (Dkt. 29.) The first claim concerned the boundaries of the easement, while Claims Two and Three concerned different aspects of the scope of the easement. Defendants filed a motion to dismiss Claim One for lack of subject matter jurisdiction, and sought dismissal of two defendants named in Claims One, Two and

---

[12] Kirk Flannigan, Area Ranger, wrote to Plaintiffs on November 30, 2016, indicating the Forest Service's planning efforts to develop the Trail were well underway, and that once planning efforts were complete, the intent was to "build this trail in the current easement location." (AR 001.)

[13] Plaintiffs argued also that the Forest Service's actions were contrary to the National Environmental Policy Act, 42 U.S.C. § 4321 *et. seq.* ("NEPA"). Plaintiffs' environmental claims are discussed in a separate memorandum decision and order.

**MEMORANDUM DECISION AND ORDER - 9**

Three. Defendants did not raise the statute of limitations as grounds for dismissal. The Court granted Defendants' motion. (Dkt. 44.)

Thereafter, Plaintiffs filed the Second Amended Complaint which, after further briefing, was deemed filed on May 8, 2020. (Dkt. 50, 59.) Claims One and Two seek to quiet title to the Property and prevent the construction of the Trail as proposed.

## STANDARD OF REVIEW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *See id*. at 248. The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T. W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 - 31 (9th Cir. 1987) (internal citation omitted). However, Plaintiffs bear the burden of satisfying the Court as to its jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**MEMORANDUM DECISION AND ORDER  - 10**

# DISCUSSION

Under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, the United States may be named as a party defendant in a civil action to "adjudicate a disputed title to real property in which the United States claims an interest…." Disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA. *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009).

While the QTA waives the sovereign immunity of the United States in a civil action "to adjudicate a disputed title to real property in which the United States claims an interest," any such action must be brought within the applicable limitations period. 28 U.S.C. § 2409a(a). A civil action to quiet title is "barred unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. § 2409a(g). "Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Id*. The phrase, "'should have known' imparts a test of reasonableness." *Shultz v. Dep't of Army, U.S.*, 886 F.3d 1157, 1160 (9th Cir. 1989) (quoting 28 U.S.C. § 2409a(g)). A claim accrues when the United States' actions "would have alerted a reasonable landowner" to the adverse interest of the United States. *Id.* "The crucial issue in the statute of limitations inquiry is whether the plaintiff had notice of the federal claim, not whether the claim itself is valid." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

The limitations period is jurisdictional and cannot be waived. *Wilkins v. United States*, 13 F.4th 791, 795 (9th Cir. 2021). Therefore, a jurisdictional bar may be raised at any time, and the Court may address it *sua sponte*. *Humboldt County v. United States*,

MEMORANDUM DECISION AND ORDER - 11

684 F.2d 1276, 1280 (9th Cir. 1982); *Park County, Mont. v. United States*, 626 F.2d 718, 720 (9th Cir. 1980).[14] The QTA's statute of limitations is strictly construed. *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273 (1983). If a suit is barred by the QTA's statute of limitations, the Court has "no jurisdiction to inquire into the merits." *Id.* at 274.

## ANALYSIS

Plaintiffs' first claim under the QTA challenges the scope of the Trail Easement. Plaintiffs argue that the Trail Easement does not authorize "construction or maintenance" of a "commuter trail" for summer use.[15] Plaintiffs' second claim contends the proposed Trail is not compatible with the Conservation Values and rights reserved to the Grantors in the 2005 Conservation Easement Deed.

Plaintiffs argue their claims are not time barred, because Plaintiffs were not "on notice" of the Government's adverse claim until the Forest Service formally announced its plan to construct a "developed commuter trail." Pls.' Supp. Brief at 8, n.3. (Dkt. 130.)[16] Plaintiffs insist that, until plans for development of the Trail became concrete and particularized, which occurred no earlier than July 1, 2014, the date of publication in the

---

[14] Plaintiffs' assertion that the Forest Service conceded the Court's jurisdiction over Plaintiffs' QTA claims is rejected. *See* Pl. Supp. Brief at 7 n.1. (Dkt. 130.) If at any time the Court determines it lacks subject-matter jurisdiction, the Court must dismiss the cause of action. Fed. R. Civ. P. 12(h)(3). Further, the defense of lack of subject matter jurisdiction is expressly preserved against waiver. Cmt. 1966 Amendment, Fed. R. Civ. P. 12(h)(3). Thus, the Court may determine the question of its jurisdiction at any time.

[15] Plaintiffs have never objected to winter use of the Trail by snowmobiles or snow grooming equipment. *See Second Am. Compl.* ¶¶ 82, 110, 111. (Dkt. 50.)

[16] Plaintiffs' complaint indicates they believed the Property subject to the Easement "would only be used as it exists in its current state – as an undeveloped path that is well hidden within the landscape during the summer and serves as a snowmobile trail in the winter." Second Am. Compl. ¶ 110. (Dkt. 50.)

**MEMORANDUM DECISION AND ORDER - 12**

Schedule of Proposed Actions, the Forest Service took no action inconsistent with Plaintiffs' (or their predecessors') ownership interests. Therefore, Plaintiffs argue neither they nor their predecessors in interest "would [] have reasonably known that Trail construction would occur." *Id.* at 10. Thus, Plaintiffs contend the statute of limitations did not accrue until the Forest Service impermissibly expanded the "scope of the Conservation Easement by undertaking construction activities" inconsistent with the "plain language of the Easement." Pls.' Supp. brief at 10.

Put simply, Plaintiffs contend that their interests peacefully coexisted with those granted to the Government, and the clock did not begin to run on their QTA claims until the Forest Service announced its intent to begin construction activities. Plaintiffs insist the Forest Service asserts a "new interest that is fundamentally incompatible with" the Conservation Values expressed in the Deed, and "seeks to expand a preexisting claim." *See Werner v. United States*, 9 F.3d 1514, 1519 (11th Cir. 1993.) The Court views it differently.

The property right that Plaintiffs challenge—the right to permit public use—is the same property right that Plaintiffs' predecessors in interest granted to the Government in May of 2005. The Forest Service's plan to actually construct a serviceable trail within the 30 foot Easement area, and thereby facilitate public use, did nothing to expand the public use rights granted to the Government in 2005. The Government's interest has been adverse to that of the Grantors ever since the Conservation Easement Deed was executed and recorded. The Forest Service's decision to act upon its rights, and develop the "strip of land to be utilized as a trail in that portion of the Easement area…as shown on Exhibit

**MEMORANDUM DECISION AND ORDER - 13**

D," and thereby facilitate "bicycle, horse, and foot travel," did nothing to expand its rights. Rather, the plan to construct the Trail and create a six-and-one-half foot wide, 4.4-mile-long, gravel-paved, multi-use trail brought to fruition the Government's right to permit public use of a trail within the Easement area.

Plaintiffs' thinly veiled attempt to couch their claims in terms of impermissible "construction activities" that "expand the scope of the easement," rather than what it really is—opposition to public use of a well-delineated trail by summer visitors to Redfish Lake—is revealed by the complaint and Plaintiffs' briefing. For instance, Plaintiffs allege a "high-traffic commuter Trail" will interfere with their right to use and enjoy their Property, and will present problems between cattle and people. Second Am. Compl. ¶ 113. (Dkt. 50.) Plaintiffs express concern for trail users such as individuals in wheelchairs or pushing strollers. *Id.* In their brief, Plaintiffs openly claim that "construction of a commuter trail, which invites large numbers of people, undermines the Grantors' reserved interests" of cattle ranching and quiet enjoyment. Pls.' Mem. at 16. (Dkt. 114-5.)

Plaintiffs insist they were under the impression when they purchased the Property that the land would remain in its current state, i.e., undeveloped, with any path that may have existed[17] within the Easement area "well hidden" during the summer. Second Am. Compl. ¶ 110. But development—in this case construction of a six-and-one-half foot wide, 4.4-mile-long, gravel-paved, multi-use trail—begets an increase in public use. And

---

[17] The Forest Service disputes that there was any visible pathway crossing the Property for pedestrian, bicycle and equestrian use within the Easement area in 2005. Def. Brief at 3 n. 2. (Dkt. 115.) The dispute is not material.

**MEMORANDUM DECISION AND ORDER  - 14**

public use is exactly what the Forest Service has had the right to allow pursuant to the Trail Easement since May of 2005.

Public use, not construction, is exactly what the Pivas, and now Plaintiffs, were aware could occur. For instance, the record reflects the Pivas were aware of the potential for extensive public use of a summer trail. Mr. Piva's May 2005 letter referred to the Trail as a "public trail across the ranch." He outlined "enormous problems" with the concept of a "summer use trail system across ranch property." These problems included contacts between livestock and humans, especially those accompanied by dogs and bicycles, and the potential preclusion of use of grazing lands by livestock on either side of the trail because of "extensive public use of the trail." Mr. Piva referred also to the Trail Easement as a "significant government 'takings' due to loss of large tracts of grazing lands," and his later 2014 email referred to the trail as a "public hiking trail."[18]

Only now, when the Forest Service has actually developed (and implemented) plans[19] to facilitate public use, do Plaintiffs complain. Whether the trail was a "well hidden path" or a six-and-one-half foot wide, gravel-paved multi-use trail is of no moment for accrual of the statute of limitations in this case. The 12–year limitations period begins when a plaintiff knows or should know of the government's adverse land claim. 28 U.S.C. § 2409a(g). This standard does not require the Government to provide explicit notice of its claim, nor must the Government's claim be "clear and unambiguous." *Block II*, 789 F.2d at 1313. "Knowledge of the claim's full contours is not

---

[18] Although Mr. Piva's two letters are in the Administrative Record, Plaintiffs failed to comment on this evidence in their briefing.
[19] Construction of the Stanley Redfish Trail began on or about June 17, 2019.

required. All that is necessary is a reasonable awareness that the Government claims some interest adverse to the plaintiff's." *Id*. (quoting *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980)). "As long as the interest claimed is a 'cloud on title,' or a reasonable claim with a substantial basis, it constitutes a 'claim' for purposes of triggering the twelve-year statute of limitations." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991). Even invalid government claims trigger the limitations period for QTA claims. *See id*.

Simply put, the limitations period is triggered when a landowner has reason to know that the Government claims some type of adverse interest in that land. *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 738 (8th Cir. 2001) (citing *Patterson v. Buffalo Nat'l River*, 76 F.3d 221, 224 (8th Cir. 1996)). Here, adversity did not arise simply because the Forest Service began "construction" of the Trail. Rather, the adverse interest of permitting or otherwise facilitating public use of a trail within the Easement area was known at the time the Conservation Easement Deed was executed and recorded in May of 2005. And, to the extent that there may have been implied limitations to the volume of public use by virtue of the Deed's preservation of Conservation Values or the rights reserved to the Grantors, that conflict was also known at the time the Deed was executed and recorded.

Even if the Court credited Plaintiffs' arguments, the Court cannot conclude, as a matter of law, that the QTA limitations period was tolled. As explained, the QTA limitations period accrues when a plaintiff or his predecessor in interest has reason to know of a cloud on his title. *See Richmond*, 945 F.2d at 769. The inescapable corollary to

**MEMORANDUM DECISION AND ORDER - 16**

this principle is that the QTA limitations period is not tolled when government action simply compounds a pre-existing cloud on title. *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 744 (8th Cir. 2001). Viewing Plaintiffs' position charitably, the 2014 Notice of Proposed Action, and the 2017 Decision Memo, did no more than confirm the cloud that already existed on the Property by virtue of the 2005 Conservation Easement Deed. That cloud is public use, whether by construction of a developed trail or some other alternative.

The statute of limitations is not tolled simply because the Forest Service had not officially proposed until 2014 a trail that could actually be used by the public for bicycle, horse, and foot travel within the Easement area. *State of Cal. ex rel. State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 397 (9th Cir. 1985) (deeds constituted notice of the federal claim); *Humboldt County v. United States*, 684 F.2d 1276 (9th Cir. 1982) (limitations period began when agreement signed, not when government built road). Further, it is well established that the United States does not abandon its claims to property by inaction. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1199 (9th Cir. 2008) (citing *United States v. California*, 332 U.S. 19, 40 (1947)). Here, there is no dispute that the public access rights granted to the Government constitute a "claim," and that Plaintiffs, and their predecessors in interest, were on notice of the Deed recorded in May of 2005. To hold otherwise, and confirm there was no justiciable controversy until construction activities began and conditions changed, does not comport with the limited waiver of sovereign immunity Congress intended. *See Vincent Murphy Chevrolet Col, Inc. v. U.S.* 766 F.2d 449, 452 (10th Cir. 1985) (declining to toll statute of

**MEMORANDUM DECISION AND ORDER - 17**

limitations based upon changed conditions; restrictions contained in 1965 quitclaim deeds were enforceable).

Put simply, the accrual of Plaintiffs' claims for purposes of the statute of limitations is not affected by the Forest Service's failure to formally announce or otherwise implement a plan for development of the Trail until July of 2014. By virtue of the language in the 2005 Conservation Easement Deed, Plaintiffs' predecessors in interest had actual notice of the Government's right to permit public use of a strip of land within the Easement area for a trail allowing bicycle, horse, and foot travel. This adverse interest, regardless of any actual adversity until the construction of a developed trail began, existed from the time the Deed was executed. Consequently, the statute of limitations on Plaintiffs' claims under the QTA expired before Plaintiffs filed their complaint in 2019, some fourteen years later. *Cf. Saylor v. United States*, 315 F.3d 664, 670 (6th Cir. 2003) (rejecting the plaintiffs' argument that the statute of limitations should start to run from the date the plaintiff became aware of its claim). Therefore, the Court finds that it lacks subject matter jurisdiction and must dismiss Claims One and Two from this lawsuit.

Plaintiffs' related motion, filed pursuant to Fed. R. Civ. P. 56(d), will be denied. Plaintiffs sought permission to conduct additional discovery if the Court considered the Forest Service's extrinsic evidence submitted in support of its arguments related to Plaintiffs' QTA claims. The Court did not consider the evidence, and therefore the motion will be denied as moot.

**MEMORANDUM DECISION AND ORDER - 18**

## CONCLUSION

An appreciation of the full contours of the Forest Service's claim is not needed to start the QTA's clock. *Knapp*, 636 F.2d at 283. It is enough that Plaintiffs or their predecessors in interest were area of the existence of an adverse right held by the Government. That right—the right to permit public use—existed long before the Forest Service detailed its construction plans to develop the Stanley Redfish Trail for use during the summer by bicycle, horse, and foot travelers. "Records, not actions, were enough to put the plaintiffs on notice" here. *George v. U.S.*, 672 F.3d 942, 947 (10th Cir. 2012). The Court rejects Plaintiffs' attempt to reframe the conflict and tease out a rule that a plaintiff need not bring suit until the Government acts to enforce its rights as inconsistent with the plain language and application of the QTA. Plaintiffs' claims under the QTA are time-barred.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiffs' Motion for Summary Judgment on Claims One and Two of the Second Amended Complaint (Dkt. 114) is **DENIED**.

2) Defendants' Motion for Summary Judgment on Claims One and Two of the Second Amended Complaint (Dkt. 116) is **GRANTED** for lack of subject matter jurisdiction.

2) Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 56(d) (Dkt. 118) is **DENIED as MOOT**.

DATED: February 24, 2022

Candy W. Dale
Chief U.S. Magistrate Judge